UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                              CRIMINAL NO. 3:18-CR-52-DPJ-LGI

BRANDON DESHANTA MILLER,
JEROME MILLER, JR., AND JAMIE ANIVAL
HERNANDEZ

ORDER

This criminal matter is set for an evidentiary hearing and pretrial conference on May 21, 2021, at 9:00 a.m. The Court recently learned that Defendant Brandon Deshanta Miller's unit at the Madison County Jail is quarantined until May 28, 2021. Accordingly, the Court will not conduct the pretrial conference as scheduled and will now address two of the four pending motions that do not require evidence, including the one filed by Brandon Miller.

I.      Defendant Jerome Miller, Jr.'s Motion in Limine [168]

The Government states that it does not plan to offer the evidence Jerome Miller moved to exclude unless it becomes relevant. Jerome Miller's motion is granted. If the Government concludes that the evidence has become relevant, it must raise the issue outside the jury's presence.

II.     Brandon Miller's Motion in Limine [263]

Defendant Brandon Miller identifies ten topics that he says the Court should exclude from evidence under Federal Rules of Evidence 401 through 404. The Government concedes all but three, acknowledging that it will not attempt to introduce the topics found in Paragraphs 2(b), (c), (d), (e), (h), (i), and (j) of Brandon Miller's motion. *See* Def.'s Mot. [263] at 2–4. The motion is granted as to those topics. If the Government concludes that the evidence has become relevant, it must raise the issue outside the jury's presence.

The remaining three topics, reflected in Paragraphs 2(a), (f), and (g) of Brandon Miller's motion, address his alleged prior bad acts and those of alleged co-conspirators. The Government says those topics reflect intrinsic evidence of the charged offenses that is not unduly prejudicial.

The charged offenses are found in a superseding indictment filed on July 10, 2019. It charges Brandon Miller and three co-defendants in Count I with conspiring to distribute and possess with intent to distribute methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Count I also identifies other alleged co-conspirators, most relevant for this motion, Shandlette Hudson, who was charged in the original indictment but entered a guilty plea. The conspiracy allegedly occurred between November 2014 and the date of the indictment. The first indictment was filed on March 7, 2018, but it was superseded on July 10, 2019.

In addition to that charge, Brandon Miller is the sole defendant named in three more counts. Counts II and III charge him with violating 21 U.S.C. § 841(a)(1) by possessing with the intent to distribute 50 grams or more of methamphetamine on or about April 17, 2017, and August 31, 2017. Finally, though less relevant to this motion, Count IV charges Brandon Miller with being a felon in possession of a firearm on or about November 19, 2017, in violation of 18 U.S.C. § 922(g)(1).

Brandon Miller says the following three topics are irrelevant to these charges under Rules 401 and 402, would constitute improper character evidence under Rule 404(b)(1), and would be substantially more prejudicial than probative under Rule 403:

> a. On June 19, 2016, co-defendant, Shandlette Hudson was encountered by Transportation Security Administration (TSA) officers at the Jackson-Evers International Airport attempting to board a commercial flight from Jackson, Mississippi to Dallas, Texas with $55,020.00 in his carry-on luggage. According to Department of Homeland Security report, dated July 5, 2016, Hudson indicated that he was traveling to Texas to purchase two antique cars.

> . . . .
>
> f.      On February 27, 2017, personnel operating pursuant to an authorized wire intercept recorded an incoming telephone call to Target Telephone 5 [and] monitored an outgoing SMS/Text message (SMS/Text #58621) from Target Telephone 5 to 972-684-4516, a cellular telephone used by Jerome Miller. During the recording, [Brandon and Jerome Miller] argue about "7 girls" which is a slang term for cocaine. Affidavit in Support of Application for Wire Intercept, Filed on March 31, 2017. (GOV-001707).
>
> g.      On February 28, 2017, personnel operating pursuant to an authorized wire intercept recorded an incoming telephone call from Target Telephone 5 (Call #58498) to 915-256-9101, a telephone number utilized by REDACTED #4.  Law enforcement believes REDACTED #4 supplied marijuana and methamphetamine to Miller.  During the recording, Miller tells REDACTED #4, that he presently has about $100,000 and expects an additional $50,000.00 to arrive soon. They then discuss an earlier negotiated transfer of methamphetamine that never resulted in a delivery, because Miller failed to call REDACTED #4 to confirm it.

Def.'s Mot. [263] at 3–4.

To begin, evidence is relevant if "it has *any* tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added).  For reasons that will become more apparent, all three of the disputed topics are relevant to the conspiracy and possession-with-intent-to-distribute charges in Counts I through III.

As for the objections under Rules 403 and 404 to these alleged bad acts, the Court follows the test announced in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc).  The threshold question under this analysis is whether the "defendant in fact committed" the alleged bad act.  *Id.* at 912.  The Government must therefore "provide evidence sufficient to allow a reasonable jury to find that the defendant committed the act." *United States v. Gonzalez-Lira*, 936 F.2d 184, 190 (5th Cir. 1991).  That is not disputed.

From there, the Court asks whether the alleged bad acts are intrinsic or extrinsic to the charges against the defendant. *Beechum*, 582 F.2d at 911.  If intrinsic, then Rule 404 does not

apply. *Id.* Evidence is intrinsic when it "and the evidence of the charged crime are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005). "Evidence is intrinsic to a conspiracy if 'it is relevant to establish how the conspiracy came about, how it was structured, and how each appellant became a member.'" *United States v. Sangs*, 163 F.3d 1355 (5th Cir. 1998) (quoting *United States v. Lokey*, 945 F.2d 825, 835 (5th Cir. 1991)). "And, plainly, acts committed in furtherance of the charged conspiracy are themselves part of the act charged and therefore qualify as intrinsic evidence." *United States v. Ceballos*, 789 F.3d 607, 621 (5th Cir. 2015) (citation and quotation marks omitted).

Here, all three disputed topics occurred during the charged conspiracy to possess with the intent to distribute methamphetamine, and all three seem to relate to that alleged conspiracy. They also demonstrate relationships between named defendants and alleged co-conspirators, how the conspiracy allegedly started, and its ongoing nature.

Defendant does note as to Paragraph 2(a) that Hudson claimed the $55,000 discovered in his bag at the Jackson airport was to purchase an antique car, but that does not render the incident inadmissible. The evidence still shows that Hudson claimed to be flying from Mississippi to Texas to see Brandon Miller with a large sum of cash. The jury is not required to believe his assertions to the agents regarding the purpose for that cash. Plus, the evidence links Hudson—a named co-conspirator in the indictment—to Brandon Miller and further reflects a Mississippi/Texas connection consistent with the geographic scope of the alleged conspiracy.

In sum, all three topics appear to be part of the conspiracy itself and at least complete the picture of its scope. They also provide background on how the alleged conspiracy started and its participants. The evidence is intrinsic.

Because the evidence is intrinsic, there is no need to consider the next *Beechum* step, whether the "evidence is relevant to an issue other than the defendant's character" under Rule 404(b). 582 F.2d at 911. But even assuming the evidence is extrinsic, it does satisfy the second *Beechum* step because communications regarding alleged drug transactions and large sums of cash at least reflect knowledge, intent, and absence of mistake. *See* Fed. R. Evid. 404(b)(2).

The final issue is Rule 403, which must be addressed whether the evidence is intrinsic or extrinsic. Here, all three topics are highly probative of an alleged ongoing drug-trafficking operation. While the evidence might hurt the Defendant's case, Rule 403 addresses "unfair prejudice." And with one exception, there is no unfair prejudice.

That exception is the reference to "7 girls" found in the February 27, 2017 text message. Def.'s Mot. [263] ¶ 2(f). Defendant says this "is a slang term for cocaine," and he is not charged with possessing cocaine. *Id.* The full text reads: "I'm bringing that to u today hv my shit together see how u play me I got this shit started and I can't get shit u let a Nigga run off with 7 girls and u didn't do shit wen u know I got u but this how I get played jus hv mine and we good bra." Gov't's Resp. [276] at 3 (citing GOV-001706-1707).

This message has probative value because it explains the Millers' relationship and reflects ongoing communications that appear to involve trafficking. But the type of drug involved in their earlier altercation is not significant to those issues. Thus, the probative value of the phrase: *"u let a Nigga run off with 7 girls and u didn't do shit wen u know I got u"* is not yet apparent. *Id.* (emphasis added). Moreover, the date of the "7 girls" dispute is unknown, making it hard to evaluate whether it should be considered under Rule 404(b)(2) or is unfairly prejudicial for that additional reason.

Motions in limine are preliminary holdings that may be revisited at trial. Accordingly, if the Government wants to include the emphasized phrase with the rest of the evidence, it must address the issue at sidebar to develop a better record. Otherwise, the rest of the three disputed topics are not unfairly prejudicial or confusing, and even if so, the Rule 403 considerations would not substantially outweigh probative value. Brandon Miller's motion in limine is granted in part and denied in part.

III.     Miscellaneous Issues

The only remaining motions are those related to Defendant Jamie Anival Hernandez. Under Federal Rule of Criminal Procedure 43, Defendants' attendance is not required for pretrial hearings or hearings addressing questions of law. And while counsel for the other defendants may attend if they desire, the Court will not require them to do so. Hernandez may participate by video.

Finally, while Defendants' attendance at the pretrial conference is not technically required under Rule 43, the Court believes their attendance would be prudent. Accordingly, the pretrial conference will be postponed until after Defendant Brandon Miller is released from quarantine. The Court intends to set that for June 1, 2021; counsel shall contact Courtroom Deputy Shone Powell no later than May 19 to set the time.

IV.     Conclusion

For the foregoing reasons, Defendant Jerome Miller, Jr.'s Motion in Limine [168] is granted, and Defendant Brandon Deshanta Miller's Motion in Limine [263] is granted in part and denied in part.

**SO ORDERED AND ADJUDGED** this the 18th day of May, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE